IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| SARAH SANDOVAL | * |
|     Plaintiff | * |
| v. | * Civil Action No.: 1:17-cv-01599 PJM |
| THE CENTER FOR INNOVATIVE GYN CARE, PC, et al. | * |
| | * |
|     Defendants | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PLAINTIFF'S MOTION TO COMPEL

Plaintiff Sarah Sandoval, by her attorneys, Alison D. Kohler, Henry E. Dugan, Jr., and Dugan, Babij, Tolley & Kohler, LLC, files this Motion to Compel, pursuant to Fed. R. Civ. P. 37, for a complete production of materials and meaningful answers to questions asked at the 30(b)(6) Deposition of the Corporate Defendant, The Center for Innovative Gyn Care, PC (hereinafter "CIGC"), which was taken on November 13, 2018, and as grounds therefor, states:

1.    This is a medical malpractice action in which Plaintiff Sarah Sandoval, alleges that Natalya Danilyants, M.D. and her practice group, CIGC, were negligent in failing to provide informed consent and were negligent in the performance of a myomectomy (surgical removal of fibroids) performed by Dr. Danilyants on October 22, 2015. See Plaintiff's Complaint (Docket No. 1).

2.    Plaintiff first filed a corporate designee deposition notice on April 20, 2018, pursuant to F. R. Civ. P. 30(b)(6), seeking to take the deposition of the CIGC

corporate designee or designees on May 21, 2018. See Deposition Notice, attached hereto as Exhibit 1.

3. At the request of defense counsel, that deposition date was postponed in order for CIGC to hire separate counsel to represent it at the deposition and for the remainder of the case. The law firm of Wharton, Levin, Ehrmantraut & Klein entered its appearance as counsel for CIGC on or about May 21. 2018. (Docket No. 20).

4. A new 30(b)(6) Deposition notice was issued, and an agreed-on deposition date was set for July 2, 2018. See Exhibit 2. Shortly before that deposition was to take place, counsel for CIGC filed a motion for protective order and motion to stay the deposition. (Docket No. 22). CIGC also sought protection from producing the same documents in response to Plaintiff's request for production of documents, which had already been pending without response, for months. After fully briefing the issues, Magistrate Judge Sullivan entered an order denying in part and granting in part CIGC's motion for protective order. (Docket No. 32). Importantly, Magistrate Judge Sullivan's order allowed Plaintiff to explore the content of CICG's website as of September 1, 2015, and to ask the corporate designee questions about the content of the website and the basis for the statements made on that website. A new deposition date for the corporate designee deposition was scheduled for October 2, 2018. Unfortunately, Plaintiff's counsel was still in trial on another matter on that date, and the parties agreed to a new deposition date of November 13, 2018. Plaintiff issued a new deposition notice consistent with the Court's rulings on the motion for protective order. See Exhibit 3. In addition, Plaintiff's counsel continued to seek production of the requested documents and the answers to interrogatories prior to the deposition.

5.     On November 5, 2018, counsel for CIGC requested a conversation about "narrowing" the breadth of the request for the contents of CIGC's website. See Exhibit 4. Counsel conferred by telephone and then email on November 6, 2018, but could not reach agreement on restricting the scope of the deposition further beyond what was contained in the Court's order. See email chain, attached as Exhibit 5. Plaintiff's counsel expected that CIGC would, at a minimum, produce the contents of the website referenced in defense counsel's emails. However, in an effort to be prepared, Plaintiff's counsel went onto the "Wayback Machine", which is a site on the internet where older internet sites are archived and accessible to the general public, to produce portions of the CIGC website from the time period prior to September 1, 2015 that were particularly important to Plaintiff's claims so that the corporate designee or designees could confirm the contents of at least those portions of the website during the corporate designee deposition.

6.     At the deposition on November 13, 2018, CIGC produced one and only one corporate designee -- Natlaya Danilyants, M.D. The deposition transcript is attached in full as Exhibit 6 to this motion. Despite the communications between counsel before the deposition, **no** website documents were produced either before the deposition or at the time of the deposition by CIGC.

7.     Further, Dr. Danilyants was woefully unprepared to answer specific questions about the contents of the CIGC website as of September 1, 2015. While she claimed that she looked at the Wayback Machine archives from the time prior to September 2015, she could not verify that what was contained on that archived website was on the CIGC website before September 1, 2015. Corporate Designee Deposition (Exhibit 6) at 11-13. She did not look at every single page. Id. at 14. She could not

answer whether anything on that website appeared to NOT be from 2015. Id. at 14-15. She admitted that she could not tell whether anything on the archived pages was or was not there in 2015 through 2017 because the website is generally "similar" and because the website gets "continuously updated" Id.

8. Importantly, Dr. Danilyants did not take the steps required of a corporate designee under the Federal Rules to educate herself on the questions that she knew were coming. Dr. Danilyants is not and never has been the person with responsibility for maintaining the CIGC website. The website was originally designed by a third-party vendor, to whom Dr. Danilyants did not reach out in preparation for the deposition to try to determine the contents of the website. Id. 16. In fact, Dr. Danilynats could not remember the name of the vendor. Id. at 16-17. Nor could Dr. Danilyants testify to whether the outside vendor had any role in maintenance going forward after the launch of the website. Id.. She did not know if the third-party vendor had any sort of ongoing responsibility for the website. Id. at 25. Clearly, she did not reach out the vendor or instruct anyone else to reach out to the vendor.

9. Further, CIGC employed Jessica Bembow as a person with principal responsibility for maintaining the website in 2015 and today. Id. at 16-17. Ms. Bembow has been with CIGC since the website was created. Id.. Her duties include keeping the website updated. Id. While Dr. Danilyants testified that she talked to Ms. Bembow in preparation for the deposition to confirm that CIGC does not archive its own website, she did NOT go through the Wayback Machine items with Ms. Bembow to see if Ms. Bembow could confirm that the portions of the website that were archived were accurate representations of the website as of September 1, 2015. Id. at 17-18.

10. Dr. Danilyants also could not answer where the text that eventually gets incorporated into the website is stored. Id. at 20-22. She agreed that Ms. Bembow was the best person to answer those questions, but she had not asked Ms. Bembow those questions prior to the deposition. Id. at 22-23. Dr. Danilyants could not even tell Plaintiff's counsel whether there was one or more than one web address maintained by CIGC. Id. at 25.

11. Dr. Danilyants' inability to answer questions about the website did not improve when actual printed versions of the CIGC website from the Wayback Machine were produced to her in the deposition. Before even one question was asked about these exhibits, CIGC's counsel objected, with the following colloquy occurring between counsel:

> Q. I'm going to show you 7 and 8, which are taken from the archive.org web 8/15/2015, a section called Who We Are out of the Center For Innovative GYN Care website.
>
> MS. WIGGINS: I'm going to object. You can go ahead answer any questions if you can.
>
> MS. KOHLER: The basis for your objection is what?
>
> MS. WIGGINS: The basis for the objection is what was put in the responses to Request For Production of Documents, the Wayback Machine, the information in the Wayback Machine cannot be authenticated, and it is not a complete version of the website as it existed in 2015. I personally tried to get on the page and it specifically said is wasn't archived. So it's not a complete version of the website.
>
> MS. KOHLER: I'm sure that's true, but it's a portion of the website.

> MS. WIGGINS: It cannot be
> authenticated. It wasn't archived with the
> consent of CIGC, and it cannot be authenticated.
>
> But I'm going to let her answer questions to the
> best of her ability, and we'll have to take it up
> with the court.
>
> MS. KOHLER: Well, we sure will.

Id. at 55-56. Further colloquy occurred between counsel before the actual questioning on the documents began as follows:

> MS. WIGGINS: It's my understanding that
> Dr. Danilyants is now going to be questioned
> about Exhibits 7 through 15 which are printouts
> from the Wayback Machine.
>    I would like a continuing objection to
> any questions about this material as it cannot be
> authenticated. I can tell just from the
> printouts that they are not complete. There's
> missing items on pages, and some of the pages,
> for instance, it says 2 out of 8, which means
> it's not a complete printout. So to save time,
> I'm just going to ask for a continuing objection
> to all questions about this material.
>
> MS. KOHLER: Right. You can have a
> continuing objection. The reason that I brought
> this with me is we've had numerous conversations
> and e-mails over the last week or so, and I
> learned today, perhaps I should have learned last
> night when I got the document response at
> 5 o'clock, but I learned today that you weren't
> producing anything from the website. You've
> already said I think why that was. But we had
> had earlier conversations where I thought that
> the conversations had been along the lines of
> it's so voluminous and it's so burdensome that
> you didn't want to produce the whole website.
> You only wanted to produce the aspects related to
> the LAAM procedure.
>    And so this is a source that is, the
> Wayback Machine is a source that is used by
> everybody including apparently you to try to

6

capture old websites while there's nothing cut out. There are -- the areas that are blank we'll all know, if you look at the Wayback Machine I can -- this is just the way it prints out when you look at it in -- on your screen. You're getting photographs that don't print out, and you're getting like links to other video clips and that sort of thing that don't print out. But as far as I'm concerned, there's nothing in -- there's nothing that's been deleted by me. There's nothing inaccurate about what was printed out here. But the links do not print out, and the links, as you've already discovered, many of them don't go to the video because the video wasn't captured at the same time that the language was captured.

MS. WIGGINS: That goes to my point that it is not the capture from August of 2015, and the reason, we'll just put on the record, that we did not produce it is based upon further research, it is clear that the Wayback Machine has not captured a complete version of the 2015 website. There are links missing, there are videos missing. And this information cannot be authenticated.

MS. KOHLER: Of course. I'm sorry. I'll let you finish. I apologize.

MS. WIGGINS: If we have to, we'll take it up with the court.

MS. KOHLER: Of course it can be authenticated. What you're telling me you can't do is you can't get to some of the links. A number of links are things like patients' stories, which we've already established today that patients' stories haven't changed. And so it can be authenticated. Is it the complete website? No, it's not. But am I entitled to what you've got by way of the of the website, I believe I am. I believe that the judge ordered that. That was number one on the topics of conversations. That was also number four on the document request of the Notice to Take Notice the

> Corporate Designee Deposition. I believe the judge has ordered it to be produced. Whether it can be produced in total or not is irrelevant in my view.
>
> MS. WIGGINS: I disagree with you. We will have to take it up with the court.
>
> MS. KOHLER: Okay. But we've agreed that you can have a continuing objection so we can move on.

CIGC counsel's objections and statements on the record provided clear instruction to Dr. Danilyants about how to answer Plaintiff's counsel's questions, and Dr. Danilyants did not disappoint.

    12.    When asked if the Wayback Machine print-outs from August 15, 2015, marked as Exhibit 7, contained any materials that were not on the CIGC website as of that date, Dr. Danilyants replied that "I have no idea honestly." Id. at 63.[1] She could not even say whether she thought words had been inserted. Id. at 63-64. She said that the language was language that "could have been" from the CIGC website. Id. at 64. She said that she didn't think anyone could answer that question, but of course, she never asked that question of Ms. Bembow. She did not seek any information from the third-party vendor. She did not investigate where the corporation stores the text of their website. In essence she did no investigation.

    13.    Dr. Danilyants could not verify that the language from page 1 of Exhibit 7 was ever part of the CIGC website – whether it be in 2015 or 2016 or 2018. Id. at 65-66. She had similar answers to pages 2, 3 and 4 of Exhibit 7. Id. at 69–71, 79. Dr. Danilyants had similar testimony with regard to Exhibits 9, 11, 13, and 15. Id. at 89-90,

---

[1] Exhibits 7, 9, 11, 13 and 15 are attached hereto collectively as Exhibit 7 so the Court can make sense of the deposition transcript.

8

101, 103. 106-107. Importantly, when asked if Ms. Bembow would have known whether Exhibit 11 had been on the website as of August of 2015, Dr. Danilyants said "Probably". Id. at 103-104.

14. With respect to the duty of a corporate designee to prepare for a 30(b)(6) deposition, Judge Messitte for this Court has stated:

> There can be no question that the rule imposes a "duty to prepare the designee[] . . . [that] goes beyond matters personally known to the designee or to matters in which that designee was personally involved." *Poole v. Textron, Inc., 192 F.R.D. 494, 504 (D. Md. 2000)*, citing *United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996)*. The designee must be prepared to the extent that matters are reasonably available, whether from documents, present or past employees, or other sources. *Id.* Contrary to the Magistrate Judge's ruling in this case, the organization is expected to create a witness or witnesses with responsive knowledge. *Taylor, 166 F.R.D. at 361*. In no sense is a 30(b)(6) deposition limited to a witness or witnesses who can authenticate documents or identify other possible fact witnesses.
>
> The more difficult issue is how extensively the designee or designees must prepare. One widely cited standard suggests that the corporation "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the requesting party] and to prepare those persons in order that they can answer fully, completely, and unevasively, the questions posed . . . as to the relevant subject matters." *Mitsui & Co. v. Puerto Rico Water Res. Auth., 93 F.R.D. 62, 67 (D.P.R. 1981)*. While the rule may not require absolute perfection in preparation -- it speaks after all of matters known or "reasonably available to the organization" -- it nevertheless certainly

9

> requires a good faith effort on the party of the designate to find out the relevant facts -- to collect information, review documents, and interview employees with personal knowledge just as a corporate party is expected to do in answering interrogatories.

Wilson v. Lakner, 228 F.R.D. 524, 528 (D. Md. 2005).

15. In this case, it is clear from the transcript that, at best, CIGC and Dr. Danilyants took only minimal steps to educate the designee about the contents of the CIGC website as of 2015. CIGC chose not to produce the person with the most knowledge of the website – Jessica Bembrow. Dr. Danilyants did not go over the captures of the archived website from the Wayback Machine with the person who could "probably" speak to whether the text included in the archived website was accurate. Dr. Danilyants did not speak to the third-party vendor who set up the website. Dr. Danilyants did not even know if the third-party vendor played any role in continuing to maintain or manage the website. Dr. Danilyants did not ask about where CIGC stores the text for its website. In short, other than asking Ms. Bembrow if CIGC itself maintains archived versions of its own website, Dr. Danilynat did not take necessary steps to be a witness with "responsive knowledge". Instead, it appears clear that counsel decided that the Wayback Machine archives could not be authenticated, and that was the only research done by the CIGC and its designee.

16. CIGC should be compelled to produce a designee with real knowledge of the questions about the existence and content of the website as of September 1, 2015, including whether the language from the Wayback Machine archives would have appeared on the CIGC website as of September 1, 2015.

10

/s/ Alison D. Kohler
ALISON D. KOHLER (Bar #01277)
Dugan, Babij, Tolley & Kohler, LLC
1966 Greenspring Drive, Suite 500
Timonium, Maryland 21093
akohler@medicalneg.com
(410) 308-1600
*Attorneys for Plaintiff*

## REQUEST FOR HEARING

Plaintiff, Sarah Sandoval, respectfully requests a hearing on the Motion To Compel.

/s/ Alison D. Kohler
ALISON D. KOHLER (Bar #01277)
Dugan, Babij, Tolley & Kohler, LLC
1966 Greenspring Drive, Suite 500
Timonium, Maryland 21093
akohler@medicalneg.com
(410) 308-1600
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

SARAH SANDOVAL                             *

    Plaintiff                              *

v.                                         * Civil Action No.: 1:17-cv-01599 PJM

THE CENTER FOR INNOVATIVE GYN               *
CARE, PC, et al.
                                                *

    Defendants
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of December 2018 that a copy of Plaintiff's Motion To Compel, Request for Hearing and Proposed Order were delivered by first class mail and electronically to:

Benjamin Vaughan, Esquire
Susan Boyce, Esquire
Armstrong, Donohue, Ceppos, Vaughan & Rhoades, Chtd.
204 Monroe Street, Suite 101
Rockville, Maryland 20850

Michael K. Wiggins, Esquire
J. Kristen Wiggins, Esq.
Wharton Levin Ehrmantraut & Klein
104 West Street
P.O. Box 551
Annapolis, Maryland 21404-0551

                                                      /s/ Alison D. Kohler
                                                  ALISON D. KOHLER (Bar #01277)
                                                  Dugan, Babij, Tolley & Kohler, LLC
                                                  1966 Greenspring Drive, Suite 500
                                                  Timonium, Maryland 21093
                                                  akohler@medicalneg.com
                                                  (410) 308-1600
                                                  *Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

SARAH SANDOVAL                     *

    Plaintiff                              *

v.                                          * Civil Action No.: 1:17-cv-01599 PJM

THE CENTER FOR INNOVATIVE GYN    *
CARE, PC, et al.
                                                       *

    Defendants

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ORDER**

Upon consideration of the Plaintiff's Motion to Compel, and any opposition thereto, it is, this _____ day of _____, 2019,

ORDERED that said Motion be and the same hereby is GRANTED; and it is further

ORDERED that Defendant The Center for Innovative Gyn Care shall produce a corporate designee or designees at a date mutually convenient to all counsel within 30 days of the date of this order who has appropriately investigated the contents of the CIGC website as of September 1, 2015, and is prepared to answer counsel's questions about the same.

                                                                                                        _____
                                                                                                                 JUDGE

cc:

Alison D. Kohler
Dugan, Babij, Tolley & Kohler, LLC
1966 Greenspring Drive, Suite 500
Timonium, Maryland 21093

Benjamin Vaughan, Esquire
Susan Boyce, Esquire
Armstrong, Donohue, Ceppos, Vaughan & Rhoades, Chtd.
204 Monroe Street, Suite 101
Rockville, Maryland 20850

Michael K. Wiggins, Esquire
J. Kristen Wiggins, Esq.
Wharton Levin Ehrmantraut & Klein
104 West Street
P.O. Box 551
Annapolis, Maryland 21404-0551