IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SARAH SANDOVAL | * |
|     Plaintiff | * |
| v. | *   Civil Action No. 8:17-cv-01599-PJM |
| THE CENTER FOR INNOVATIVE<br>  GYN CARE, P.C., *et al.* | * |
| | * |
|     Defendants | |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
*IN LIMINE* TO PRECLUDE ANY EVIDENCE, TESTIMONY OR ARGUMENT
THAT INFORMATION ON THE CIGC WEBSITE WAS FALSE, MISLEADING,
UNTRUTHFUL, OR INDUCED PLAINTIFF TO UNDERGO THE SURGICAL
PROCEDURE AT ISSUE AND/OR THAT THE CIGC WEBSITE
ESTABLISHED ANY DUTY OR ELEMENT OF INFORMED CONSENT**

Now comes the Plaintiff, Sarah Sandoval, by and through her attorneys, Alison D. Kohler, George S. Tolley III, and Dugan, Babij, Tolley & Kohler, LLC, and for the reasons hereinafter stated, respectfully request that this Honorable Court deny the Motion *in Limine* of the Defendants, Natalya Danilyants, M.D., and The Center for Innovative Gyn Care, P.C. ("CIGC"), to Preclude Any Evidence, Testimony or Argument that Information on the CIGC Website was False, Misleading, Untruthful or Induced the Plaintiff to Undergo the Surgical Procedure at Issue and/or that the CIGC Website Established any Duty or Element of Informed Consent.

    1. In this medical negligence action, the Plaintiff, Sarah Sandoval, contends that the Defendants, Natalya Danilyants, M.D., and her employer, The Center for Innovative Gyn Care, P.C., negligently performed a surgery that Defendants called a laparoscopic assisted

abdominal myomectomy ("LAAM") procedure on October 22, 2015, for the purpose of removing fibroid tumors measuring up to 13.6 cm in diameter from the Plaintiff's uterus, and failed to obtain a proper informed consent prior to that procedure.

2. In the instant Motion *in Limine*, the Defendants are trying to prevent any introduction of statements, representations and admissions of Dr. Danilyants and CIGC made on their website about the LAAM procedure and its alternatives for what appears to be three reasons: (1) that Plaintiff has not pleaded fraud; (2) that the website cannot be properly authenticated; and (3) that the party admissions by Dr. Danilyants and CIGC are not relevant to the case. These three issues are addressed seriatim below.

3. Defendants first seek to bar introduction of the language on the CIGC website arguing that Plaintiff has not pleaded fraud , misrepresentation or fraudulent inducement at trial. *See* Motion in Limine, at 10-13. Because the Plaintiff has not pleaded those claims and does not intend to prove them at trial, this portion of the instant Motion is a ***red herring*** and should be denied as moot. The Plaintiff has pleaded only negligence and failure to provide informed consent claims in this action, and the absence of any dispositive motions with respect to those claims can be taken as a tacit admission that the Plaintiff has adduced sufficient evidence to generate triable issues of material fact with respect to those claims. *See* Fed. R. Civ. P. 56(a).

4. In addition to excluding non-existent claims of fraud, misrepresentation or fraudulent inducement, the Defendants seek to exclude any and all evidence, testimony and/or argument concerning any and all of the Defendants' own statements, if those statements appear anywhere in the internet.[1] Such broad, novel, and far-reaching relief is wholly

---

[1] The instant Motion *in Limine* is so indefinably broad that it fails to specify what evidence the Defendants are seeking to exclude. Rather than providing a specific list of statements, web pages, or exhibits that are

2

unavailable to the Defendants, whose 25-page Motion *in Limine* fails to include even a single case where such relief has been granted.

5. With respect to this additional (non-fraud-related) relief, the instant Motion *in Limine* is wholly without merit, and must be denied.

6. Under Federal evidentiary law, relevant statements made by the Defendants and their authorized agents – including statements made by the Defendants and their agents and published on the internet at https://innovativegyn.com/ during the relevant time period – are admissible evidence and not hearsay, Fed. R. Evid. 801(d)(2), when the statements are properly authenticated. *See* Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 568 (D. Md. 2007) ("statements contained in electronically made or stored evidence often have been found to qualify as admissions by a party opponent if offered against that party").

7. Defendants seem to argue that Plaintiff cannot properly authenticate the CIGC website statements. Defendants are wrong. Citing Fed. R. Evid. 403, the Defendants imply that the evidence at issue (which the Defendants vaguely describe as "the CIGC website," "The Wayback Machine," and "YouTube"[2]) should be excluded for every single one of the reasons stated in that evidentiary rule – "confusing the issues, misleading the jury, undue delay, and wasting time." *See* Motion in Limine, at 19. The Defendants' "undue prejudice" appeal fills almost seven (7) pages, but includes no citations to controlling (or persuasive, or even irrelevant) case law.

---

inadmissible as evidence, the Defendants instead ask this Honorable Court to exclude "the CIGC website" (without providing a URL, web address, or otherwise specifying whether "the CIGC website" includes social media accounts), such that neither the Plaintiff nor this Honorable Court could possibly know exactly what information or electronic documents would be excluded if the instant Motion *in Limine* were granted.

[2] Video footage uploaded to YouTube can be compelling evidence. *See, e.g.*, Rivieri v. Baltimore Police Dep't, 204 Md. App. 663 (2012) (affirming termination of police officer based on "substantial evidence," including video evidence posted on the YouTube website).

8. As discussed at length by this Court in <u>Lorraine</u>, *supra*, the statements of a party opponent, published in electronic format on the internet, are admissible at trial if they are properly authenticated. In the case at bar, proper authentication will be made by the testimony of the Plaintiff, Sarah Sandoval, and the Defendants' corporate designee, Jessica Benbow.

9. First, Plaintiff Sarah Sandoval can authenticate the portions of the CIGC website that Plaintiff intends to introduce into evidence as the material that she reviewed relating to the LAAM procedure amd Defendants' comparisons of the LAAM procedure to its alternatives.

10. Second, Plaintiff took the deposition of CIGC corporate designee Jessica Benbow, who was the CIGC website manager for all of the relevant time period. Plaintiff's counsel painstakingly showed the CIGC website to Ms. Benbow that was archived by the Wayback Machine between August 15, 2015 and September 18, 2015 (the time period in which Ms. Sandoval would have looked at the CIGC website) that related to the LAAM procedure, the expertise of Dr. Danilyants, and the CIGC travel program.

11. Ms. Benbow was intimately involved with the redesign of the CIGC website that went live in April of 2015. See Transcript of Jessica Benbow at 12-13, attached in whole as Exhibit 1. Ms. Benbow confirmed that the basic language from the website about the LAAM procedure, and the bio of Dr. Danilyants did not change in the first 6 months after it went live. Benbow Dep. at 21-22. She confirmed that the basic way the main page of the website looked remained the same from April of 2015 through October of 2015 except that Defendants added information about the travel program in June of 2015. Benbow Dep. at 25-26. She did not recall any changes to the sections on "Who We Are", to Dr. Danilyants' bio, to the section on

"Why We're Different", to the section on "Specialist v. Generalist", and to the infographic on Specialist v. Generalist. Benbow Dep. at 32-38. Ms. Benbow confirmed that the infographic on the Wayback Machine about the LAAM procedure that compared the LAAM to the alternative myomectomy surgeries, was correct. See, e.g., Benbow Dep. at 38-39 (providing oral testimony sufficient to establish that an infographic, "LAAM – A Better Myomectomy," was generated by the Defendants). Ms. Benbow went on to affirm that there were no changes to various parts of the CIGC website on the LAAM procedure between August 15, 2015 and September 18, 2015, again allowing a jury to reasonably conclude that there were no changes made.

      12. Between Plaintiff Sandoval's testimony and the videotaped testimony of Jessica Benbow, pursuant to Fed. R. Evid. 901, the Plaintiff will authenticate her evidence at trial.

      13. In their Motion in Limine, at 21-22, the Defendants seek to discredit "The Wayback Machine," as unreliable. However, no less an authority than the Maryland Court of Appeals relies upon that archive as "an internet library to preserve 'historical collections that exist in digital format.'" Hranicka v. Chesapeake Surgical, Ltd., 443 Md. 289, 304 n.8 (2015). While the Wayback Machine may not preserve every part of a website – particularly interactive things like video – there is NO evidence before this court that suggests that the Wayback machine doesn't accurately capture the language and images from websites. In other words, what is captured is an accurate depiction of what is captured. The Wayback Machine doesn't change the language or the graphics. Further, Ms. Benbow, throughout her deposition, confirmed that the CIGC website sections captured by the Wayback Machine relevant to this case – including information about the LAAM procedure and CIGC's

5

comparison of the LAAM to other alternative myomectomy procedures – was accurate and would have been in existence at the time that Plaintiff Sandoval reviewed the website.

14. Finally, the Defendants urge this Court to exclude the CIGC website materials by inaccurately claiming that their own statements and admissions published by Defendants on the internet are wholly irrelevant to the Plaintiff's informed consent claim, arguing:

> There is no evidence in this case that Dr. Danilyants, or any other agent of CIGC, represented to the Plaintiff that the CIGC website contained information relevant to the issue of informed consent and/or that she should review information on the website as peart of the informed consent process.

Motion *in Limine*, at 16 (citing no supporting evidence). This statement is contradicted by the Plaintiff's sworn testimony:

> Q. So what was your understanding then as to the difference in the surgery that Dr. Damilyants does versus what you were recommended by Dr. Stadnick?
>
> A. Well, ***based off of kind of what she had told me and then also what I saw on their website, the LAMM was less invasive than robotic surgery***.
>
> They had a high success rate for even complicated situations where the fibroids may be very large or there may be several fibroids, that ***the recovery time was shorter compared to robotic or open surgeries***, and that ***the risks were lower with the LAMM procedure compared to robotic or open surgeries***.
>
> \*      \*      \*
>
> Q. Other than Dr. Damilyants, did anyone else from her office give you any type of instructions as to what would happen after surgery?
>
> A. ***The documents they sent me***. And I believe ***there was like a link on that document that you would click to. It would refer you back to their website***, like in regards to the LAMM postop procedures, things to do like showering, those basic things of what to expect after surgery.

Transcript of Sandoval Testimony, at 105-06, 126, attached hereto as Exhibit 2. The Plaintiff's testimony – that the Defendant, Dr. Danilyants, reinforced the information contained in the Defendants' published statements on the internet concerning the nature of the LAAM procedure and the low risks associated with it, combined with embedded links and references to those published statements within the Defendants' own consent documents – establish that the published statements were directly relevant to the informed consent process as a consequence of the Defendants' own actions. See also Exhibit 3, which are the documents referenced by Ms. Sandoval that refer CIGC patients back to the CIGC website.

15.     Defendants' position that the materials on their website have no relevance to the issue of informed consent also defies common sense and logic. The information that Defendants provided to Plaintiff about the LAAM procedure and its advantages over alternative surgeries – in other words some of the key information that Maryland law demands that a health care provider give to a patient – is set forth in detail on Defendants' website. Nothing could be more relevant.

16.     The Defendants also torture Maryland's case law on informed consent in an effort to support their claim that information published on the internet is irrelevant and inadmissible with respect to such a claim. *See* Motion *in Limine*, at 14-15. Defendants argue that nothing that a health care provider provides to a prospective patient can be considered by a jury in determining whether the health care provider has properly provided informed consent IF the information is given before an official consultation with the physician occurs. In other words, Defendants would have this Court find, as a matter of law, that statements made on the internet, even if reviewed and relied on by the patient and even if untrue, cannot be considered by a jury unless the physician goes over them with the patient during an

"informed consent" conversation. While a physician-patient relationship is a prerequisite to liability, ***no published appellate decision in Maryland*** holds that information communicated by a physician to the patient prior to (let alone during) the formation of that relationship is irrelevant or inadmissible – and it is certainly not Maryland law that, prior to the formation of such a relationship, health care providers and/or their agents may freely provide inaccurate or misleading information to patients.

17. The Defendants' statements are directly relevant to the issue of informed consent. Black letter Maryland law clearly establishes that the doctrine of informed consent imposes a duty, for example, "to reveal . . . the nature of the proposed treatment." McQuitty v. Spangler, 410 Md. 1, 20-21 (2009) (*quoting* Sard v. Hardy, 281 Md. 432, 439-40 (1977)). In the case at bar, the Defendants' statements – whether published on the internet or made orally to the Plaintiff herself – misrepresented the nature of the LAAM procedure as ***distinct and different*** from an open surgical procedure, *see* Transcript of Sandoval Testimony, at 105-06 (averring that Dr. Danilyants and the website told her that recovery time and risks were lower with LAAM than with open), when the LAAM procedure is, in fact, ***indistinguishable*** from an open surgery, as explained by the Plaintiff's expert, Steven McCarus, M.D., in his deposition testimony:

> Q   Now, can you describe for us the – what – what part of this LAAM procedure is laparoscopic versus open?
>
> A   Well, it seems like the only thing they do as far as laparoscopy is put a trocar through the bellybutton and hook up a camera with a scope and look in. I mean that's the – ***it's mainly open, because then they make an incision and put a disk in and tried to do all the surgery***. I guess, laparoscopically, they try to put the tourniquet around the blood vessels which wasn't able to be done in this case. So ***I don't know really what the advantage of doing the laparoscopy is to be honest with you***.

Transcript of McCarus Testimony, at 139 (emphasis added), attached hereto as Exhibit 4. Accordingly, if the Defendants failed to reveal information such as the true nature of the proposed LAAM treatment to the Plaintiff, Sarah Sandoval, and a reasonable patient in the position of the Plaintiff would not have consented to the treatment had truthful information been disclosed, then a jury reasonably could find the Defendants liable to the Plaintiff for failure to obtain a proper informed consent. MPJI-Cv 27:4 (5th ed 2017 & Supp.2019).

18. Because the Defendants' statements, including statements published on the internet, were explicitly part of the informed consent process and are directly relevant to the issue of whether the Defendants met their duty under the doctrine of informed consent, the instant Motion is wholly without merit and must be denied.

19. For all of these reasons, the Plaintiff submits that the Motion *in Limine* of the Defendants, Natalya Danilyants, M.D., and The Center for Innovative Gyn Care, P.C. ("CIGC"), to Preclude Any Evidence, Testimony or Argument that Information of the CIGC Website was False, Misleading, Untruthful or Induced the Plaintiff to Undergo the Surgical Procedure at Issue and/or that the CIGC Website Established any Duty or Element of Informed Consent, is wholly without merit and must be denied.

Respectfully Submitted,

_____
Alison D. Kohler (Bar #01277)
George S. Tolley, III (Bar #10084)
Dugan, Babij Tolley & Kohler, LLC
1966 Greenspring Drive, Suite 500
Timonium, Maryland 21093
(410) 308-1600
akohler@medicalneg.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of January, 2020, a copy of the Plaintiff's Response in Opposition to the Motion *in Limine* of the Defendants, Natalya Danilyants, M.D., and The Center for Innovative Gyn Care, P.C. ("CIGC"), to Preclude Any Evidence, Testimony or Argument that Information of the CIGC Website was False, Misleading, Untruthful or Induced the Plaintiff to Undergo the Surgical Procedure at Issue and/or that the CIGC Website Established any Duty or Element of Informed Consent, and proposed Order, was served by electronic filing and by first-class mail to the following counsel of record:

Benjamin Vaughan, Esquire
Susan B. Boyce, Esquire
ARMSTRONG, DONOHUE, CEPPOS VAUGHAN,
 & RHOADES, CHARTERED
204 Monroe Street, Suite 101
Rockville, Maryland 20850
*Counsel for Defendant Natalya Danilyants, M.D.*

Michael K. Wiggins, Esquire
J. Kristen Wiggins, Esquire
Wharton, Levin, Ehrmantraut & Klein, P.A.
104 West Street
Annapolis, Maryland 21401

*Counsel for Defendant Center for Innovative GYN Care, PC*

Alison D. Kohler (Bar #01277)
George S. Tolley, III (Bar #10084)
Dugan, Babij Tolley & Kohler, LLC
1966 Greenspring Drive, Suite 500
Timonium, Maryland 21093
(410) 308-1600
akohler@medicalneg.com

*Attorneys for Plaintiff*